CARSON, Circuit Judge.
*1114 We consider whether a prosecutor enjoys absolute immunity from suit for fabricating evidence against an individual during the preliminary investigation of a crime. Because Supreme Court precedent dictates that he does not, Buckley v. Fitzsimmons (Buckley I), 509 U.S. 259, 261, 272-76, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), we affirm the district court's order denying the prosecutor absolute immunity.
I.
The circumstances that give rise to the case before us stem from Plaintiff Floyd S. Bledsoe's allegedly wrongful conviction for the 1999 rape and murder of fourteen-year-old C.A.[1]
Our story starts on a Friday afternoon in early November after C.A. arrived home from school. At the time, "home" for C.A. meant the house belonging to Plaintiff, then twenty-three years old, and his wife Heidi, who was C.A.'s older sister. C.A. was staying with the couple and their two young sons in an effort to improve her attendance at school.
Around 5:00 p.m., one of C.A.'s friends dropped by the house to visit her. But although C.A.'s coat and book bag were there, C.A. was not. After learning C.A. was gone, Plaintiff and Heidi reported her disappearance to the Jefferson County, Kansas Sheriff's Department. The couple then spent the next forty-eight hours or so looking for the missing girl.
A breakthrough came on Sunday evening when Tom Bledsoe, Plaintiff's older brother, confessed that he had killed C.A.
Tom was somewhat of an outsider. Although older than Plaintiff, he had been living with his and Plaintiff's parents, whose residence was near Plaintiff and Heidi's house, at the time of C.A.'s disappearance. He apparently had a limited social life, had some unspecified intellectual limitations, and was partially deaf. He also had engaged in some alarming behavior in the past, including pursuing young girls. And even though he was twenty-five years old at the time of the events in question, Tom remained an active member and participant in his church's Sunday School program for children.
Fittingly enough, Tom first confessed that Sunday evening to his Sunday School teacher. He left two messages on the teacher's answering machine stating things like, "I know where C.A. is," "I'm going to turn myself in to the police," and "I will pay for the rest of my life." He also called his parents, confessed to killing C.A., and informed them he was going to turn himself into the police.
Tom's parents hired an attorney to represent him.[2] The two met at the Jefferson County Sheriff's Department that same Sunday evening and described Tom's involvement in C.A.'s disappearance and death to multiple police officers.[3] In short, the two men informed officers that Tom *1115 had shot C.A. in the back of the head and buried her in a trash dump on the property where Tom lived with his parents.
Tom led the officers to C.A.'s body, which had been buried under a large amount of dirt and plywood. C.A. had been shot once in the back of the head and several times in the torso. The coroner later found semen in her vagina but could not say whether she had been forcibly raped. Near her body, investigators found three bullet casings, a pornographic video, and a t-shirt printed with the name of the church Tom attended. Tom's attorney also surrendered a Jennings nine-millimeter handgun-the professed murder weapon-to the authorities. Authorities soon charged Tom with the first-degree murder of C.A.
According to Plaintiff's allegations, the tide changed rather quickly. Within several days-and despite the mountain of evidence against Tom and the pending charges against him-authorities switched course and decided to pin C.A.'s death on Plaintiff instead.
The alleged scheme to frame Plaintiff for the crime fully ripened at a meeting between various people who, for one reason or another, had united against him. Although Plaintiff's complaint does not state with certainty who attended this meeting, the participants included Defendant Jim Vanderbilt, the then-prosecutor of Jefferson County; Tom's attorney; and other unknown and unspecified individuals. The participants hatched the following plan: First, Tom would recant his confession. Second, Tom would claim he had encountered Plaintiff at a roadside intersection the day after C.A.'s disappearance and that, during the encounter, Plaintiff had spontaneously admitted to killing the girl. Third and finally, Tom would maintain that Plaintiff had bullied him into taking the fall for the crime by threatening to expose that Tom had watched pornographic videos, masturbated, and tried to have sexual intercourse with a dog.
After the schemers had coached Tom to go along with this fabricated narrative, both Plaintiff and Tom took polygraph tests. Plaintiff, as expected, disavowed any involvement with C.A.'s disappearance or death. But Tom provided the false recantation and implicated Plaintiff as the perpetrator.[4]
Immediately after the polygraph examination ended, Tom tried to retract his recantation and reaffirm to the schemers that he was the one with blood on his hands. But the confederates convinced him to stay the course. That same evening, Defendant Vanderbilt released Tom from jail and dropped the charges against him. Authorities then arrested Plaintiff for C.A.'s murder.
Defendant Vanderbilt eventually offered Plaintiff a plea deal of five years' imprisonment. Plaintiff rejected it and went to trial in April 2000 on charges of murder, aggravated kidnapping, and taking indecent liberties with a child. Largely because of the schemers' allegedly fabricated evidence, a jury convicted Plaintiff of all three charges. The judge sentenced Plaintiff to life imprisonment on the murder charge and sixteen years' imprisonment on the kidnapping and sexual abuse charges. Tom walked away unscathed.
After spending fifteen years in prison, Plaintiff caught a major break.[5] October *1116 2015, new forensic testing excluded Plaintiff as the source of the semen found in C.A.'s vagina. The forensic testing indicated instead that Tom was the most likely source.
Tom committed suicide a short time later. He left a suicide note stating the following:
I sent an innocent man to prison. The Jefferson County police and county attorney Jim Vanderbelt [sic] made me do it. I was told by Vanderbelt to keep my mouth shut. Now I am going to set thing right.
I killed [C.A.] on November 5, 1999. I had sex with her and killed her.
... I drove up to the ditch where the family dump trash and tried to convince her not to tell .... I went to my truck and got my 9mm gun that was behind my seat and pushed her to the ground to try to scare her, but it failed with the gun went off behind her head. .... I as well might go ahead and say it I raped and murdered a 14 year girl.
I tried telling the truth but no one would listen. I was told to keep my mouth shut. It tore me up doing it. I would ask for forgiveness, but I know none will come. Not even from God.
Floyd S Bledsoe is innocent man.
Tom E Bledsoe is the guilty one.
In addition to the suicide note, Tom left a diagram showing where he had shot C.A. before moving her body to the dump site. When investigators searched that location, they discovered a fourth bullet casing.
A Kansas state court vacated Plaintiff's conviction, and the Jefferson County Attorney dismissed all charges against him. Plaintiff was finally out of prison for good.
Plaintiff now brings various claims against the individuals and entities he alleges are responsible for his wrongful conviction. The only claims relevant to this appeal are the two that Plaintiff asserts against Defendant Vanderbilt. The first claim alleges that Defendant Vanderbilt, in violation of 42 U.S.C. § 1983, "deprived Plaintiff of his constitutional right to a fair trial by fabricating Tom's testimonial inculpation of [Plaintiff]," which "resulted directly in the unjust criminal conviction of Plaintiff." The second claim alleges that Defendant Vanderbilt, again in violation of 42 U.S.C. § 1983, "reached an agreement" with other defendants-that is, conspired-"to frame Plaintiff for a crime he did not commit by fabricating testimonial evidence by Tom that would be used to convict Plaintiff and thereby to deprive him of his constitutional right to due process." Thus, for all intents and purposes, the main difference between Plaintiff's first and second claims is that the former alleges Defendant Vanderbilt fabricated Tom's testimonial evidence to secure Plaintiff's conviction; the latter, by contrast, alleges Defendant Vanderbilt conspired to fabricate Tom's testimonial evidence to secure Plaintiff's conviction.
Defendant Vanderbilt argued to the district court that prosecutorial immunity-a type of absolute immunity-shielded him from suit on these two claims. He also argued that, in any event, the district court must dismiss Plaintiff's second claim against him because Plaintiff had not alleged sufficient facts to demonstrate the existence of a conspiracy.
The district court disagreed on both counts. It first concluded that Defendant Vanderbilt was not entitled to absolute *1117 immunity or even, for that matter, qualified immunity. It also concluded that the allegations in Plaintiff's complaint were more than sufficient to uphold a conspiracy.
Defendant Vanderbilt now appeals the district court's denial of absolute immunity.[6] In the alternative, he challenges the district court's determination that Plaintiff alleged sufficient facts to state a conspiracy claim.
II.
We first consider the district court's decision to deny absolute immunity to Defendant Vanderbilt. Although that issue comes before us on an interlocutory appeal, a district court's decision denying immunity is "final" within the meaning of 28 U.S.C. § 1291 under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We therefore have jurisdiction over the district court's denial of absolute immunity. Boles v. Neet, 486 F.3d 1177, 1179 (10th Cir. 2007). Our review is de novo. Perez v. Ellington, 421 F.3d 1128, 1133 (10th Cir. 2005).
Prosecutors generally enjoy absolute immunity from suit for activities that are "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). By contrast, "absolute immunity may not apply when a prosecutor ... is instead engaged in other tasks, say, investigative or administrative tasks." Van de Kamp v. Goldstein, 555 U.S. 335, 342, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009). To be sure, "[d]rawing a proper line between these functions may present difficult questions." Imbler, 424 U.S. at 431 n.33, 96 S.Ct. 984. But as difficult as those questions may be, the fact that drawing a line is even necessary makes one thing certain: a prosecutor's absolute immunity "is not grounded in any special 'esteem for those who perform these functions.' " Kalina v. Fletcher, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (emphasis added) (quoting Malley v. Briggs, 475 U.S. 335, 342, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ). Rather, determining whether to grant a prosecutor absolute immunity requires courts to take a "functional approach," Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), wherein they examine the "nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).
Fortunately, the Supreme Court has already confronted and analyzed the function that bears directly on Plaintiff's claims against Defendant Vanderbilt. In Buckley I, 509 U.S. at 261, 272-76, 113 S.Ct. 2606, the Supreme Court held that absolute immunity does not protect the act of "fabricating evidence during the preliminary investigation of a crime." This is true because prosecutors cannot "properly claim to be acting as advocates"-that is, engaging in functions intimately associated with the judicial phase of the criminal process-when performing such acts. Id. at 275, 113 S.Ct. 2606. Instead, fabricating evidence while a crime remains unsolved is more akin to "the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." Id. at 273, 113 S.Ct. 2606. The Supreme Court observed that "[w]hen the functions of prosecutors and detectives are the same ... the immunity that protects them is also the same." Id. at 276, 113 S.Ct. 2606. Thus, since a detective who fabricates evidence during the preliminary investigation of a crime "is entitled only to qualified *1118 immunity," prosecutors who do the same are likewise "protected only by qualified immunity." Id. at 273, 275, 113 S.Ct. 2606.
The principles set forth in Buckley I compel us to conclude that Defendant Vanderbilt is not entitled to absolute immunity. Plaintiff alleges that Defendant Vanderbilt met with other like-minded individuals to craft a false yet detailed narrative that vindicated Tom and implicated Plaintiff as C.A.'s killer. Stated differently, Plaintiff claims that Defendant Vanderbilt fabricated evidence against him during the preliminary investigation of C.A.'s murder-the exact scenario that the Supreme Court addressed in Buckley I. Defendant Vanderbilt was thus more akin to a detective searching for (or, in this instance, creating) evidence that would give him probable cause to arrest a suspect than an advocate "evaluating evidence and interviewing witnesses as he prepares for trial." Id. at 273, 113 S.Ct. 2606. Under the reasoning of Buckley I, Defendant Vanderbilt is therefore not entitled to absolute immunity on either of Plaintiff's claims.
Defendant Vanderbilt maintains that this case is not as open and shut as it seems. Although he acknowledges the general holding of Buckley I, he argues that Plaintiff's allegations against him ultimately do not implicate that holding. Instead, he contends that Plaintiff's claims for damages against him actually arise from his alleged use of the fabricated evidence at trial to secure Plaintiff's conviction. And since using fabricated evidence at trial-as opposed to the earlier, initial act of actually fabricating the evidence-generally is entitled to absolute immunity, Imbler, 424 U.S. at 416, 430-31, 96 S.Ct. 984, Defendant Vanderbilt argues that absolute immunity does, in fact, shield him from suit. See also Burns, 500 U.S. at 486, 111 S.Ct. 1934 ("[P]rosecutors are absolutely immune from liability under [ 42 U.S.C. § 1983 ] for their conduct in 'initiating a prosecution and in presenting the State's case ,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " (emphasis added) (citation omitted) (quoting Imbler, 424 U.S. at 430-31, 96 S.Ct. 984 )).
Defendant Vanderbilt's logic is flawed because he "conflate[s] the question whether [Plaintiff] has stated a cause of action with the question whether [Defendant Vanderbilt] is entitled to absolute immunity for his actions." Buckley I, 509 U.S. at 274 n.5, 113 S.Ct. 2606. Those two inquiries are distinct, and the conduct that ultimately allows Plaintiff a path to damages may very well differ from the conduct alleged in Plaintiff's complaint for which Defendant Vanderbilt can seek absolute immunity.
To help see why, consider the functional test that courts must use to decide questions of absolute immunity. That approach focuses only "on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." Id. at 271, 113 S.Ct. 2606 (emphases added). In fact, that is so much the case that the ultimate harm or injury-in this case, Plaintiff's wrongful conviction-is "irrelevant" to "the question whether the conduct of a prosecutor is protected by absolute immunity." Id. Necessarily, then, Defendant Vanderbilt's potential entitlement to absolute immunity is not tethered to his use of the fabricated evidence at trial. To conclude otherwise would be tantamount to holding that we must focus our absolute immunity analysis on the conduct that directly caused Plaintiff's injury; such a holding, of course, would run afoul of the functional approach because the conduct bearing on the absolute immunity analysis need not relate to Plaintiff's ultimate injury at all. Even more, that flawed approach would require us to disregard the express allegations in Plaintiff's complaint-i.e., *1119 that Defendant Vanderbilt's alleged fabrication of the evidence is the conduct that matters-and instead read between the lines of Plaintiff's complaint to discern the conduct that should really be at issue. That would contravene the axiomatic standard that Plaintiff "is the master of his complaint." Hansen v. Harper Excavating, Inc., 641 F.3d 1216, 1220 (10th Cir. 2011). Defendant Vanderbilt is therefore entitled to absolute immunity only if he can establish that fabricating evidence during the preliminary investigation of a crime triggers that immunity. Plaintiff's two claims center around the actual act of fabricating evidence, so Defendant Vanderbilt must parry that conduct if he hopes to avoid suit for those claims. But as we explained above, that road leads to a dead end given the clear holding in Buckley I.
By contrast, Plaintiff's injury and its direct cause may bear upon the question whether Plaintiff alleges valid causes of action against Defendant Vanderbilt. As the Seventh Circuit aptly put it, "the immunity depends [only] on the official's acts; the existence of a cause of action depends on the illegality of those acts and on whether an injury results." Fields v. Wharrie, 740 F.3d 1107, 1114 (7th Cir. 2014) (emphasis in original); see also Buckley I, 509 U.S. at 271-72, 113 S.Ct. 2606 ("The location of the injury may be relevant to the question whether a complaint has adequately alleged a cause of action for damages ...."). And to that end, Defendant Vanderbilt may be correct that only his use of the fabricated evidence at trial-as opposed to his earlier act of fabrication-can serve as the basis for Plaintiff's claim for damages. See Warnick v. Cooley, 895 F.3d 746, 753 (10th Cir. 2018) (observing that "the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him," does not amount to a constitutional violation (quoting Buckley I, 509 U.S. at 281, 113 S.Ct. 2606 (Scalia, J., concurring))).[4] But again, that point of *1120 nuance does not influence our disposition of Defendant Vanderbilt's current appeal, which considers only whether absolute immunity shields Defendant Vanderbilt from suit and not whether Defendant Vanderbilt's alleged conduct actually amounts to a constitutional violation. And as we noted above, that question of absolute immunity does not require us to inquire into the conduct that caused Plaintiff's ultimate injury.
Defendant Vanderbilt nonetheless offers us another argument wherein he again attempts to exploit (at least indirectly) Plaintiff's supposed inability to establish a claim for damages. Specifically, Defendant Vanderbilt asks us to bifurcate Plaintiff's claims into those that are barred by absolute immunity and those that are not barred by absolute immunity, to dismiss the barred claims, and to allow Plaintiff to pursue damages only for the non-barred claims. Effectively, that would mean Plaintiff could not pursue damages for Defendant Vanderbilt's use of the fabricated evidence at trial because, as described above, absolute immunity applies to that conduct. Burns, 500 U.S. at 486, 111 S.Ct. 1934. That would also mean, according to Defendant Vanderbilt, that Plaintiff could not pursue damages for the injuries-most significantly, Plaintiff's "wrongful conviction [and] imprisonment"-that "arose from" the alleged use of the fabricated evidence. By contrast, Defendant Vanderbilt concedes that if absolute immunity does not apply to his earlier act of fabricating the evidence itself, Plaintiff could still pursue damages for any injuries that stemmed from that alleged conduct-assuming, of course, those injuries did not include his wrongful conviction and imprisonment.
At this point in the litigation, however, we must decline Defendant Vanderbilt's suggested course of action. For one thing, bifurcating Plaintiff's claims in the way Defendant Vanderbilt suggests may again run afoul of Plaintiff's prerogative "to pursue the theory of liability he deems best." Margheim v. Buljko, 855 F.3d 1077, 1087 (10th Cir. 2017). But even if it did not, unequivocally ruling that Plaintiff may not use Defendant Vanderbilt's act of fabrication to pursue damages for his wrongful conviction and imprisonment would be tantamount to deciding that Plaintiff has failed to allege valid causes of action in his complaint. After all, we can discern only one reason why Defendant Vanderbilt invites us to bifurcate Plaintiff's claims in such a manner: a hope that, on remand, the district court would dismiss Plaintiff's new, bifurcated claims because he suffered no injuries from the act of fabrication and thus did not experience any constitutional violations. See Warnick, 895 F.3d at 753 ; see also Fields, 740 F.3d at 1114 ("[T]he existence of a cause of action depends on ... acts and on whether an injury results." (emphasis in original)). We cannot insert ourselves into that foray at this time, however, because on an appeal from a denial of absolute immunity, we lack jurisdiction to answer the question whether a plaintiff has adequately pleaded a cause of action. See, e.g., Carver v. Foerster, 102 F.3d 96, 101 (3d Cir. 1996) (observing that on an appeal from a denial of absolute immunity, an appellate court "lack[s] jurisdiction to consider" the "merits of plaintiffs' claims").
To understand why, consider the following. If Plaintiff's allegations of fabrication do not amount to valid causes of action, then Plaintiff has failed to state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "But we have already held that '[a]lthough to a certain extent a qualified immunity *1121 analysis overlaps with a 12(b)(6) analysis, we do not have jurisdiction to review the merits' of a Rule 12(b)(6) failure-to-state-a-claim argument when the defendant appeals the district court's denial of qualified immunity." Montoya v. Vigil, 898 F.3d 1056, 1064 (10th Cir. 2018) (alteration in original) (quoting Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 515-16 (10th Cir. 1998) ). And if that distinction holds true in the qualified immunity context, it holds just as true in the absolute immunity context. See Mitchell, 472 U.S. at 528-29, 105 S.Ct. 2806 (holding that "a reviewing court" has jurisdiction over a denial of absolute immunity-but not "the merits of the underlying action"-even though the court "must consider the plaintiff's factual allegations in resolving the immunity issue"). To be sure, regardless of whether qualified or absolute immunity is at issue, "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim," and "[a]n appellate court reviewing the denial of the defendant's claim of immunity need not ... even determine whether the plaintiff's allegations actually state a claim." Id. at 527-28, 105 S.Ct. 2806.
We therefore lack jurisdiction to decide whether Plaintiff's allegations against Defendant Vanderbilt state valid causes of action. That means, in turn, we must decline Defendant Vanderbilt's invitation to bifurcate Plaintiff's claims in the specific way he wants us to do so-namely, by explicitly preventing Plaintiff from employing Defendant Vanderbilt's alleged act of fabricating evidence as a means to recover damages for his wrongful conviction and imprisonment. If we instead accept that invitation, then for all intents and purposes we would (improperly) be answering the cause-of-action question.[7]
In conclusion, we hold that absolute immunity does not shield Defendant Vanderbilt from Plaintiff's allegations that he fabricated evidence against Plaintiff during the preliminary investigation of C.A.'s murder. Whether those same allegations amount to valid causes of action, however, is a question that only a future panel of this Court can decide once that question is properly before it.
III.
We next consider Defendant Vanderbilt's argument that even if absolute immunity does not shield him from suit, we should dismiss Plaintiff's second claim against him because Plaintiff failed to allege sufficient facts to demonstrate the existence of a conspiracy. We lack jurisdiction to adjudicate this issue, as well. For the reasons described in detail above, a defendant's ability to appeal a denial of absolute immunity does not give him the ability to appeal a denial of a Rule 12(b)(6) failure-to-state-a-claim argument. See Montoya, 898 F.3d at 1064. While the former counts as a "final" decision under the meaning of 28 U.S.C. § 1291, the latter does not. See Kaminski v. Coulter, 865 F.3d 339, 344 (6th Cir. 2017) ("[T]he denial of a Rule 12(b)(6) motion to dismiss is not a final order."). Accordingly, only a future panel of this Court can decide the question whether Plaintiff presented sufficient facts to demonstrate a conspiracy; we currently lack the jurisdiction to do so.
*1122 IV.
We AFFIRM the district court's decision that Defendant Vanderbilt does not enjoy absolute immunity from suit for allegedly fabricating evidence against Plaintiff during the preliminary investigation of C.A.'s murder. We DISMISS FOR LACK OF APPELLATE JURISDICTION the question whether Plaintiff alleged sufficient facts to demonstrate the existence of a conspiracy.

We use the term "allegedly" because this case comes before us at the motion to dismiss stage, and at that stage "we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Thomas v. Kaven, 765 F.3d 1183, 1190 (10th Cir. 2014) (quoting Cressman v. Thompson, 719 F.3d 1139, 1152 (10th Cir. 2013) ).

Tom's attorney, Michael Hayes, is a defendant in this case. Plaintiff's allegations against him, however, are not germane to this appeal.

Many of these officers are also defendants in this case. But like the allegations against Defendant Hayes, Plaintiff's allegations against the officers are not relevant to this appeal.

Of note, even in light of his recantation, the complaint alleges that Tom still failed the question: "Did you kill [C.A.]?"

Authorities released Plaintiff on bond in 2008 after a federal district court granted him habeas relief. Bledsoe v. Bruce, No. 07-3070-RDR, 2008 WL 2549029 (D. Kan. June 23, 2008) (unpublished). But after tasting freedom only briefly, a panel of this Court reversed the district court's ruling and forced Plaintiff to return to prison. Bledsoe v. Bruce, 569 F.3d 1223 (10th Cir. 2009).

Defendant Vanderbilt does not appeal the district court's denial of qualified immunity.

We stress that Defendant Vanderbilt may just as likely be incorrect in that regard. To be sure, if an investigating prosecutor "fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it , then the officer has not violated due process." Warnick, 895 F.3d at 753 (emphasis added) (quoting Bianchi v. McQueen, 818 F.3d 309, 319 (7th Cir. 2016) ). But that is not quite how Plaintiff's case unfolded. Rather, Defendant Vanderbilt allegedly fabricated evidence against Plaintiff and then did make further use of it at trial to secure Plaintiff's wrongful conviction. And in our circuit, the effect of that procedural nuance is unclear. Does it mean that Plaintiff alleges valid causes of action because Defendant Vanderbilt's act of fabrication was a "but-for and proximate cause" of Plaintiff's wrongful conviction (and therefore a constitutional violation)? Whitlock v. Brueggemann, 682 F.3d 567, 583 (7th Cir. 2012). Or is that procedural nuance irrelevant because, as Defendant Vanderbilt argues, his use of the fabricated evidence at trial is what actually harmed Plaintiff and thus the only conduct upon which Plaintiff can establish valid causes of action?
Some courts have gone the former route and concluded that a prosecutor's act of fabricating evidence during the preliminary investigation of a crime can serve as the basis for a valid cause of action in certain circumstances. See, e.g., id.; Fields, 740 F.3d 1107 ; McGhee v. Pottawattamie Cty., 547 F.3d 922 (8th Cir. 2008) ; Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000). Other courts have gone the latter route in similar-but not identical-circumstances and concluded that a plaintiff is simply "without recourse." Michaels v. New Jersey, 222 F.3d 118, 122 (3d Cir. 2000) (considering prosecutorial misconduct consisting of coercing witnesses rather than fabricating evidence); see also, e.g., Buckley v. Fitzsimmons (Buckley II), 20 F.3d 789, 795 (7th Cir. 1994) ("Obtaining the [witness's] confession [via coercion] is not covered by immunity but does not violate any of [the plaintiff's] rights; using the confession could violate [the plaintiff's] rights but would be covered by absolute immunity." (emphases in original)). For the reasons we describe in more detail later on, see infra, we do not express any opinion on the correct path in this specific case or any others like it. We simply mention these possibilities for the benefit of any future court that must delve into this issue.

We also note that the district court never reached the question whether Plaintiff's allegations that Defendant Vanderbilt fabricated evidence against him amount to valid causes of action. We therefore have no final decision to review under 28 U.S.C. § 1291 in this context. See Montoya, 898 F.3d at 1063 ("Our jurisdiction is based on district courts' 'decisions,' not on the particular arguments parties make in their briefs ...." (emphasis in original removed) (quoting 28 U.S.C. § 1291 )).